James C. Feldman (AK Bar No. 1702003)
Eva Sharf Oliver (*PHV Application Pending*)
SUMMIT LAW GROUP, PLLC
315 Fifth Avenue South, Suite 1000
Seattle, WA 98104
Phone: (206) 676-7000
jamesf@summitlaw.com
evao@summitlaw.com

**Attorneys for At-Sea Processors Association,**
**Alaska Groundfish Data Bank,**
**and Groundfish Forum, Inc.**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ALASKA

|  |  |
|---|---|
| OCEANA, INC.,<br><br>                Plaintiff,<br><br>    v.<br><br>NATIONAL MARINE FISHERIES SERVICE; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, in their official capacity as Secretary of Commerce; and SAMUEL D. RAUCH, III, in their official capacity as Deputy Assistant Administrator for Regulatory Programs, National Marine Fisheries Service,<br><br>                Defendants. | No. 3:24-cv-000180-SLG |

## MOTION TO INTERVENE BY AT-SEA PROCESSORS ASSOCIATION, ALASKA GROUNDFISH DATA BANK, AND GROUNDFISH FORUM, INC.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

1

# I. INTRODUCTION

Pursuant to Rule 24 of the Federal Rules of Civil Procedure, the At-Sea Processors Association ("APA"), Alaska Groundfish Data Bank ("AGDB"), and Groundfish Forum, Inc. ("GFF") respectfully move for leave to intervene as Defendants in the above-captioned litigation.[1] Plaintiff's lawsuit challenges the National Marine Fisheries Service's ("NMFS") approval of amendments relating to Essential Fish Habitat ("EFH") for five fishery management plans ("FMP") for fisheries in the North Pacific, including Amendment 127 to the FMP for Groundfish of the Bering Sea and Aleutian Islands ("BSAI") management area ("BSAI Groundfish FMP") and Amendment 115 to the FMP for Groundfish of the Gulf of Alaska ("GOA Groundfish FMP"). As trade associations representing catcher-processor vessels (APA and GFF) and a member-based organization representing trawl catcher vessels and shoreside processors (AGDB) harvesting groundfish in the North Pacific, APA's, AGDB's, and GFF's members have direct and significant interests in the EFH amendments challenged by Plaintiff and meet all requirements to intervene both as of right under Rule 24(a) and permissively under Rule 24(b).

---

[1] The undersigned has inquired as to Plaintiff and Federal Defendants' respective positions on the motion to intervene. "Plaintiffs take no position on the motion and reserve the right to file a response." Federal Defendants "oppose At-Sea Processors Association, Alaska Groundfish Data Bank, and Groundfish Forum's intervention as of right and take no position on permissive intervention."

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

## II. BACKGROUND

**A.    The Magnuson-Stevens Fishery Conservation and Management Act and Regional Fishery Management Council Framework.**

The Magnuson-Stevens Fishery Conservation and Management Act ("MSA") is the primary law that governs marine fisheries management in U.S. federal waters.[2]  U.S. fisheries management under the MSA is a transparent and public process guided by science and collaboration.  Enacted in 1976, the MSA established eight regional fishery management councils with representation from coastal states and fishery stakeholders.[3]  These regional councils are comprised of members from commercial and recreational fishing interests as well as environmental, academic, and government representatives and are tasked with developing FMPs that comply with the MSA's conservation and management requirements to promote sustainable fisheries.[4]  The North Pacific Fishery Management Council ("the Council") is the regional council covering the states of Alaska, Washington, and Oregon and has "authority over the fisheries in the Arctic Ocean, Bering Sea, and Pacific Ocean seaward of Alaska."[5]  While the Council is tasked with developing FMPs for the region, NMFS is responsible for ensuring all FMP amendments comply with

---

[2] 16 U.S.C. § 1801 *et seq.*

[3] 16 U.S.C. § 1852.

[4] 16 U.S.C. § 1852(h).

[5] 16 U.S.C. § 1852(a)(1)(G).

the MSA and other applicable laws and for publishing amendments for notice and comment.[6]

Commercial fishing for groundfish in the North Pacific is governed by FMPs developed by the Council as well as by Federal regulations established pursuant to the MSA and promulgated by NMFS.[7] The BSAI and GOA groundfish fisheries are some of the most productive fisheries in the world.[8]

**B.  The FMP Essential Fish Habitat Amendments.**

The MSA requires that each FMP, including the BSAI and GOA Groundfish FMPs, describe and identify essential fish habitat ("EFH"), defined as "those waters and substrate necessary to fish for spawning, breeding, feeding or growth to maturity."[9] In addition to describing and identifying EFH, each FMP must minimize to the extent practicable adverse effects of fishing on EFH and must identify actions to conserve and enhance EFH.[10]

Pursuant to the MSA, and "at least once every 5 years," the Council and NMFS conduct a "complete review of all EFH information" and amend EFH provisions in the

---

[6] 16 U.S.C. § 1854(a).

[7] 16 U.S.C. § 1852(b); 50 C.F.R. § 679.1(b).

[8] Declaration of Stephanie Madsen ("Madsen Decl.") ¶ 6.

[9] 16 U.S.C. § 1802(10).

[10] 50 C.F.R. § 600.805; 50 C.F.R. § 600.815.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

FMPs as warranted based on new information and the best available science.[11]  Such review includes an evaluation of published scientific literature, unpublished scientific reports, information solicited from interested parties, and previously unavailable or inaccessible data.[12]

In 2019, the Council and NFMS began its fourth 5-year review of EFH in the FMPs at issue in this litigation (referred to as the "2023 5-Year Review").[13]  The 2023 5-Year Review "evaluated new environmental and habitat data, improved the models to map EFH, updated the model to evaluate fishery impacts on EFH, updated the assessment of non-fishing impacts on EFH, and assessed information gaps and research needs."[14]  The iterative review process included input from the Council, its committees and subcommittees, and other advisory bodies.[15]  The review was completed in February 2023, at which point a final summary report was presented to the Council.[16]  Based on the review, the Council concluded substantial new information was available to revise the

---

[11] 50 C.F.R. § 600.815(a)(10); 50 C.F.R. § 600.815(b).

[12] 50 C.F.R. § 600.815(a)(1)(ii)(B).

[13] 89 Fed. Reg. 58,633 (July 19, 2024).  Prior reviews were conducted in 2005, 2010, and 2017. *Id.*

[14] Final Environmental Assessment for Essential Fish Habitat Omnibus Amendments ("EA") at 8, *available at* https://www.regulations.gov/document/NOAA-NMFS-2023-0160-0014.

[15] *Id.*

[16] *Id.*

EFH text and maps in the five at-issue FMPs.[17]  Accordingly, in December 2023, the Council recommended Amendment 127 to the BSAI Groundfish FMP, Amendment 115 to the GOA Groundfish FMP, Amendment 56 to the FMP for BSAI King and Tanner Crabs ("Crab FMP"), Amendment 17 to the FMP for the Salmon Fisheries in the Exclusive Economic Zone off Alaska ("Salmon FMP"), and Amendment 3 to the FMP for Fish Resources of the Arctic Management Area ("Arctic FMP").  These amendments reflect the best available science as well as improved models to map and evaluate EFH.[18]

Pursuant to the National Environmental Policy Act ("NEPA"), NMFS prepared an Environmental Assessment ("EA") for the recommended FMP amendments.[19]  NMFS adopted the amendments in July 2024 after notice and comment.[20]

Plaintiff alleges NMFS's approval of the EFH amendments violates the MSA, NEPA, and the Administrative Procedure Act.  Plaintiff asks this Court to vacate the decision adopting the EFH amendments, including the EA supporting the decision, and seeks other unspecified "injunctive relief as needed."[21]

---

[17] *Id.* at 9.

[18] 89 Fed. Reg. 58,633.

[19] *See* n.14 *supra*.

[20] 89 Fed. Reg. 58,633.

[21] Complaint (Dkt. 1) ¶ 2, Prayer for Relief; Dkt. 16 (Amended Complaint).

## C. At-Sea Processors Association's, Alaska Groundfish Data Bank's, and Groundfish Forum's Interests In This Litigation.

APA is a professional trade association representing members that operate catcher-processor vessels involved in the BSAI Alaska Pollock fishery.[22] APA's members own and operate 15 U.S.-flagged catcher-processor vessels that process, package, and freeze their catch within hours of harvest.[23] By volume, this is the nation's largest fishery and the world's largest groundfish fishery.[24] This abundant and well-managed fishery consistently accounts for more than one-third of total U.S. commercial fishery landings. Together with the smaller Gulf of Alaska pollock fishery, it is valued at approximately $1.42 billion in first wholesale value and is a substantial source of revenue for APA's members.[25] The Alaska pollock harvested by APA's members and other industry participants supports employment throughout the supply chain, creating approximately 30,000 jobs in the seafood harvesting, processing, distribution, wholesale, retail, restaurant, and food services industries.[26]

AGDB is a member-based organization representing shoreside trawl catcher vessels and processors.[27] AGDB currently has 50 members consisting of 42 fishing vessels and

---

[22] Madsen Decl. ¶ 3.

[23] *Id.* ¶¶ 3, 7.

[24] *Id.* ¶ 6.

[25] *Id.*

[26] *Id.* ¶ 8.

[27] Declaration of Julie Bonney ("Bonney Decl.") ¶ 3.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

7

eight shoreside processing facilities.[28]  AGDB's members participate primarily in the federal GOA groundfish fisheries for pollock, cod, rockfish, and flatfish.[29]  Some AGDB members also fish in the Bering Sea for pollock and cod.[30]  AGDB's members participate in state fisheries as well and act as tender vessels for salmon in the summer.[31]  AGDB's work supports its members and helps ensure healthy, sustainable fisheries and coastal communities.  In addition to representing its members' interests at the Council and before the Alaska Board of Fish, AGDB actively participates in fishery management by managing voluntary catch share agreements and generating weekly catch reports for the GOA and BSAI.[32]  Like APA, AGDB's members are robust contributors to Alaska's seafood economy and to the local economy of Kodiak in particular.[33]

GFF is a trade association representing five member companies that operate 15 catcher-processor vessels that make up the "Amendment 80" sector fishing for groundfish in the Bering Sea.[34]  The Amendment 80 sector was established by the Council in 2006 and enabled the formation of fishery cooperatives for trawl catcher-processors that are not

---

[28] *Id.*

[29] *Id.* ¶ 6.

[30] *Id.*

[31] *Id.*

[32] *Id.* ¶¶ 4-5.

[33] *Id.* ¶¶ 7-8.

[34] Declaration of Christopher J. Woodley ("Woodley Decl.") ¶ 3.

eligible to participate in directed pollock fisheries under the American Fisheries Act.[35]

GFF's members target a variety of flatfish species in the BSAI and GOA including

Yellowfin sole, Rock sole, Flathead sole, Greenland turbot, Alaska plaice, Arrowtooth

flounder, as well as Atka mackerel, Pacific Ocean perch, and Pacific cod.[36]  GFF was

formed to solve fishery management and environmental issues, such as minimizing

discards, avoiding unintended incidental catches, and reducing impacts to fish habitat;

informing government officials of the contributions made by the non-pollock trawl catcher

processors to the economies of Alaska and the Pacific Northwest; and conserving and

sustaining fishery resources while keeping the fishing industry economically viable.[37]

GFF's mission includes advocating for the Amendment 80 sector in regulatory and

administrative matters pending before the Council and NMFS.[38]

As with APA and AGDB, GFF's members are significant contributors to Alaska's

seafood economy. The Amendment 80 fleet directly employs approximately 2,000 crew

members with wages totaling over $113 million annually.[39]  GFF's members' operations

support an additional 2,800 year-round jobs in 11 different Alaska coastal communities

---

[35] *Id.* ¶ 4.

[36] *Id.* ¶ 3.

[37] *Id.* ¶ 5.

[38] *Id.*

[39] *Id.* ¶ 6.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

and another 1,700 year-round jobs in Washington.[40]  The flatfish, rockfish, and Atka mackerel caught by GFF's members make up approximately fourteen percent of the volume, nine percent of the ex-vessel value, and ten percent of the first wholesale value of all commercially caught seafood in Alaska.[41]  In 2021, GFF's members produced 377 million pounds of processed fish worth approximately $270 million.[42]

APA's, AGDB's, and GFF's members have longstanding interests in the responsible and sustainable harvesting of groundfish.[43]  APA, AGDB, and GFF work with fishery managers, scientists, environmentalists, and other industry members to limit bycatch and ensure the continued health and sustainability of marine resources in the North Pacific.[44]  The Alaska pollock fishery in which APA's members participate is recognized for its sustainable harvest practices and is independently certified by both the Marine Stewardship Council and the Alaska Responsible Fisheries Management program.[45]  Likewise, all GOA trawl fisheries and the Amendment 80 sector fisheries hold both Marine Stewardship Council and Responsible Fisheries Management certifications.[46]

---

[40] *Id.*

[41] *Id.*

[42] *Id.*

[43] Madsen Decl. ¶ 5; Bonney Decl. ¶ 5; Woodley Decl. ¶ 7.

[44] Madsen Decl. ¶¶ 5, 11; Bonney Decl. ¶¶ 5, 9; Woodley Decl. ¶ 7.

[45] Madsen Decl. ¶ 11.

[46] Bonney Decl. ¶ 9; Woodley Decl. ¶ 8.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG
10
Case 3:24-cv-00180-SLG    Document 18    Filed 11/14/24    Page 10 of 22

APA, AGDB, and GFF have direct and significant protectable interests in this litigation. The FMP amendments and the resulting EFH designations directly impact their members' participation in the BSAI Alaska pollock fishery, the Amendment 80 sector fisheries, the GOA groundfish fisheries, as well as other North Pacific fisheries operating in and around EFH.[47] Plaintiff has requested vacatur of the decision adopting the EFH amendments, including Amendment 127 to the BSAI Groundfish FMP and Amendment 115 to the GOA Groundfish FMP, and the EA supporting these amendments.[48] If Plaintiff were to succeed in its efforts, it would have a substantial negative impact on APA's, AGDB's, and GFF's members by creating regulatory uncertainty directly threatening the ability of their members to harvest and process fish.[49]

## III. ARGUMENT

### A. APA, AGDB, and GFF Are Entitled to Intervene as of Right.

Pursuant to Rule 24(a), APA, AGDB, and GFF are entitled to intervene as of right in this case to defend their significantly protectable interests in the BSAI Groundfish FMP, the GOA Groundfish FMP, and EFH management. The Ninth Circuit has adopted a four-part test to determine whether a party should be permitted to intervene as of right: (1) the motion must be timely; (2) the movant must claim a "significantly protectable" interest related to the property or transaction that is the subject of the action; (3) the movant must

---

[47] Madsen Decl. ¶ 14; Bonney Decl. ¶ 11; Woodley Decl. ¶ 11.

[48] Dkt. 16 at Prayer for Relief.

[49] Madsen Decl. ¶ 15; Bonney Decl. ¶ 13; Woodley Decl. ¶ 12.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

be so situated that the disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest; and (4) the movant's interest must not be adequately represented by the existing parties to the action.[50] The Ninth Circuit applies this test broadly in favor of intervention.[51] This liberal approach to intervention serves the interest of judicial efficiency: "[b]y allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues."[52] Thus, courts assess a motion to intervene "primarily by practical considerations, not technical distinctions."[53] APA, AGDB, and GFF, as representatives of the fisheries governed by the agency decision challenged in this lawsuit, meet each of the requirements for intervention as of right.

### 1. The motion to intervene is timely.

When evaluating timeliness, courts in the Ninth Circuit consider (1) the stage of the proceedings, (2) any prejudice to the existing parties, and (3) the reasons for and length of any delay.[54] The litigation is in its preliminary stages—the Complaint was filed on August

---

[50] *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011).

[51] *Id.* at 1179.

[52] *United States v. City of L.A.*, 288 F.3d 391, 397–98 (9th Cir. 2002) (citation omitted; emphasis in original); *see also Scotts Valley Band of Pomo Indians of Sugar Bowl Rancheria v. United States*, 921 F.2d 924, 926 (9th Cir. 1990) ("Rule 24(a) is construed broadly, in favor of the applicants for intervention.").

[53] *Sw. Ctr. For Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (internal quotations and citation omitted).

[54] *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1319 (9th Cir. 1997).

16, 2024, and an Amended Complaint was filed on November 5, 2024.[55]  The Federal

Defendants filed their Answer on October 16, 2024, have not yet answered the

Amendment Complaint, and the administrative record was lodged today, November 14,

2024.[56]  APA, AGDB, and GFF have acted swiftly to seek intervention, and no party will

be prejudiced by their intervention.  APA, AGDB, and GFF have submitted a proposed

answer to the Amended Complaint along with this motion to avoid any possible delay.

Intervention is routinely considered timely at this litigation stage, and no prejudice, delay,

or inefficiency will result from APA's, AGDB's, and GFF's intervention.[57]

> **2.    APA, AGDB, and GFF have significantly protectable interests in the
>           resolution of this action.**

A significantly protectable interest exists when a movant establishes that (1) "the

interest is protectable under some law" and (2) "there is a relationship between the legally

protected interest and the claims at issue" in the case.[58]  The interest requirement of

Rule 24(a) is "primarily a practical guide to disposing of lawsuits by involving as many

apparently concerned persons as is compatible with efficiency and due process."[59]

---

[55] Dkt. 1; Dkt. 16.

[56] Dkt. 14; Dkt. 15; Dkt. 17.

[57] *See Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (motion deemed timely when filed less than three months after complaint was filed and two weeks after agency's answer).

[58] *Mont. Wilderness Ass'n*, 647 F.3d at 897; *see City of L.A.*, 288 F.3d at 398 ("The relationship requirement is met if resolution of the plaintiff's claims actually will affect the applicant." (internal quotation marks and citation omitted)).

[59] *Wilderness Soc'y*, 630 F.3d at 1179 (citation omitted).

Accordingly, a significantly protectable interest need not be "a specific legal or equitable interest" to satisfy the Rule 24(a) test.[60] To satisfy the "relationship" requirement, an applicant must show that resolution of the plaintiff's claims will affect the applicant.[61]

APA, AGDB, and GFF have significant and well-demonstrated regulatory and economic interests that are directly at stake in the present litigation. In addition to the considerable economic and employment implications of this litigation on their members, each has expended resources to engage in the regulatory process for the EFH amendments. APA participates on the Council's Ecosystem Committee, which formally recommended that the full Council initiate the process to amend the FMPs for Alaska to incorporate changes to EFH information identified in the 2023 5-Year Review.[62] During the February 2023 Council meeting, APA testified in support of the EFH amendments that were ultimately recommended by the full Council and adopted by NMFS after notice and comment.[63] GFF's members' harvesting cooperative (the Alaska Seafood Cooperative) provided testimony and comments to the Council and the Council's Scientific and

---

[60] *Id.*; *see also Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1173 (9th Cir. 2011) (intervenor's interest need not be protected by statute put at issue by complaint so long as it is protected by law and relates to the claim).

[61] *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998); *see also Wilderness Soc'y*, 630 F.3d at 1179 (holding that there is "a sufficient interest for intervention purposes if [a prospective intervenor] will suffer a practical impairment of its interests as a result of the pending litigation") (citation omitted).

[62] Madsen Decl. ¶ 12.

[63] *Id.*

Statistical Committee and Advisory Panel and also submitted comments to NMFS supporting the EFH amendments challenged by Plaintiff in this litigation.[64]  Likewise, AGDB actively tracked the development of the EFH amendments through the Council to their subsequent publication and adoption by NMFS because the EFH amendments directly impact its members' participation in the North Pacific groundfish fisheries.[65]

Further, APA's, AGDB's, and GFF's members have significantly protectable interests in continued sustainable harvest of groundfish in the North Pacific.[66]  Plaintiff's lawsuit critiques the Fishing Effects (FE) model used by NMFS in developing the challenged EFH amendments.[67]  The FE model is a peer-reviewed, state-of-the-art modeling tool developed by the NMFS Alaska Regional Office and scientists at Alaska Pacific University to help quantify cumulative benthic habitat impacts attributable to commercial fishing in the North Pacific.[68]  The FE model uses Vessel Monitoring System data to track more than 8 million fishing events (including data from APA, GFF, and AGDB member vessels) to estimate both disturbance and recovery of benthic habitat features.[69]  APA's, AGDB's, and GFF's members also contributed to the development of

---

[64] Woodley Decl. ¶ 9.

[65] Bonney Decl. ¶¶ 10-11.

[66] Madsen Decl. ¶¶ 14-15; Bonney Decl. ¶¶ 10-11; Woodley Decl. ¶¶ 10-12.

[67] Dkt. 1 ¶¶ 64-69; Madsen Decl. ¶ 13; Bonney Decl. ¶ 10; Woodley Decl. ¶ 10.

[68] Madsen Decl. ¶ 13.

[69] *Id.*; Bonney Decl. ¶ 10.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

the gear tables used in the FE model.[70]  The FE model constitutes the best available science and is essential to the Council's and NMFS's assessment of the significance of fishing effects on EFH for all species managed within a fishery management plan.[71]

Accordingly, APA's, AGDB's, and GFF's members have significantly protectable interests in this litigation and satisfy the second prong of the intervention test.

### 3.  Disposition in favor of Plaintiff will impair APA's, AGDB's, and GFF's ability to protect their interests.

The test for impairment under Rule 24(a) focuses on practical effects: "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene . . . ."[72]  Intervention as of right is particularly appropriate when, as here, the plaintiff seeks injunctive relief.[73]

The effect of Plaintiff's claims in this litigation would be to invalidate the EFH amendments, including Amendment 127 to the BSAI Groundfish FMP and Amendment 115 to the GOA Groundfish FMP that govern APA's, AGDB's, and GFF's members'

---

[70] Madsen Decl. ¶ 13.

[71] *Id.*; Bonney Decl. ¶ 10; Woodley Decl. ¶ 10.

[72] *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (quoting Fed. R. Civ. P. 24 advisory committee's note).

[73] *See United States v. City of L.A.*, 288 F.3d 391, 399 (9th Cir. 2002); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 818 (where relief sought by plaintiffs will have direct, immediate, and harmful effects upon a third party's legally protectable interests, the party satisfies the "interest" test).

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

lawful harvest of groundfish in the BSAI and GOA management areas.[74] The relief requested by Plaintiff in this lawsuit—including vacatur of the EFH amendments for all five Alaska FMPs as well as unspecified "injunctive relief as needed"—would create substantial regulatory uncertainty directly threatening the ability of APA's, AGDB's, and GFF's members to harvest and process fish.[75] Vacatur of the EFH amendments would create significant confusion over which areas in the North Pacific are properly designated as EFH, including whether any avoidance or mitigation measures are required of fishing vessels operating in the area.[76] Such uncertainty could have potentially dramatic consequences for APA's, AGDB's, and GFF's members' businesses, workforces, their customers, and the communities in which they operate.[77] Furthermore, Plaintiff seeks to impose its "Freeze the Footprint" proposal on ground fisheries in the GOA, which, if successful would result in additional closure areas and could potentially bring AGDB's and GFF's members out of compliance with EFH regulations.[78] Because disposition of this case in favor of Plaintiff would impair APA's, AGDB's, and GFF's members' ability

---

[74] *See* Dkt. 1 at Prayer for Relief (seeking vacatur of the decision adopting the EFH amendments and the EA supporting them and "injunctive relief as needed," among other requests for relief).

[75] Madsen Decl. ¶ 15; Bonney Decl. ¶ 13; Woodley Decl. ¶ 12.

[76] *Id.*

[77] *Id.*

[78] Dkt. 16 ¶ 48; Bonney Decl. ¶ 13.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

to protect their significantly protectable regulatory interests in the North Pacific's

groundfish fisheries, APA, AGDB, and GFF satisfy the third prong of the intervention test.

### 4. Federal Defendants do not adequately represent APA's, AGDB's, or GFF's interests.

APA's, AGDB's, and GFF's interests in this litigation are sufficiently different

from those of the Federal Defendants to warrant intervention. The burden of

demonstrating inadequate representation is "minimal."[79] APA, AGDB, and GFF need only

show that their interests are different from the existing parties' interests such that their

representation "may be" inadequate.[80] Courts consider:

> (1) whether the interest of a present party is such that it will
> undoubtedly make all the intervenor's arguments; (2) whether
> the present party is capable and willing to make such arguments;
> and (3) whether the would-be intervenor would offer any
> necessary elements to the proceedings that other parties would
> neglect.[81]

Here, the interests and perspectives of APA, AGDB, and GFF as non-federal entities with

direct economic stakes in this controversy are very different from the interests of NMFS

and the Department of Commerce as federal regulatory agencies.[82] When parties, such as

APA, AGDB, and GFF, have private interests as opposed to the government's "public"

---

[79] *Citizens for Balanced Use*, 647 F.3d at 898.

[80] *Id.*; *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823.

[81] *City of L.A.*, 288 F.3d at 398 (quoting *Nw. Forest Res. Council v. Glickman*, 82 F.3d 825, 838 (9th Cir. 1996)).

[82] Madsen Decl. ¶ 16; Bonney Decl. ¶ 14; Woodley Decl. ¶ 13.

interests, this difference is sufficient to justify intervention.[83]  APA, AGDB, and GFF bring a unique perspective as the only parties with commercial experience harvesting groundfish in the North Pacific, and this perspective would aid the Court in better understanding the case.[84]  Because their interests are not adequately represented, APA, AGDB, and GFF meet the fourth prong of the intervention test.

## B.  Alternatively, APA, AGDB, and GFF Are Entitled to Permissive Intervention.

As with intervention as of right, permissive intervention is construed liberally in favor of the moving party.[85]  Permissive intervention is allowed under Rule 24(b) as long as the applicant for intervention establishes that "(1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims."[86]  However, "the independent jurisdictional grounds requirement does not apply to proposed intervenors in federal-question cases when the proposed intervenor is not raising new claims."[87]  Under this

---

[83] *See id.*; *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823–24; *Sierra Club v. Espy*, 18 F.3d 1202, 1208 (5th Cir. 1994); *Fresno Cnty. v. Andrus*, 622 F.2d 436, 438–39 (9th Cir. 1980).

[84] Madsen Decl. ¶ 17; Bonney Decl. ¶ 15; Woodley Decl. ¶ 14.

[85] *City of L.A.*, 288 F.3d at 397–98.

[86] *Donnelly v. Glickman*, 159 F.3d 405, 412 (9th Cir. 1998).

[87] *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 844 (9th Cir. 2011).

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

standard, neither the inadequacy of representation nor a direct interest in the subject matter of the action need be shown.[88]

As addressed above, APA's, AGDB's, and GFF's members' interests are placed directly at stake by the Plaintiff's claims and present issues of law and fact common to the main action. Indeed, APA, AGDB, and GFF represent private parties who will be most directly and adversely affected by the relief sought by Plaintiff. In addition, the motion to intervene is timely and will not prejudice the existing parties. Accordingly, if this Court were to deny the motion to intervene as of right, APA, AGDB, and GFF respectfully request that the Court grant them permissive intervention.

## IV. CONCLUSION

For the foregoing reasons, APA, AGDB, and GFF respectfully request that the Court grant their motion for leave to intervene as of right under Rule 24(a). In the alternative, APA, AGDB, and GFF respectfully request that the Court grant them permissive intervention under Rule 24(b).

DATED this 14th day of November, 2024.

SUMMIT LAW GROUP, PLLC

s/ James C. Feldman
James C. Feldman (AK Bar No. 1702003)
Eva Sharf Oliver (*PHV Application Pending*)

---

[88] *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002), *overruled in part on other grounds by Wilderness Soc'y*, 630 F.3d at 1178.

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

20

*Attorneys for At-Sea Processors Association,*
*Alaska Groundfish Data Bank, and*
*Groundfish Forum, Inc.*

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 14, 2024, I filed a true and correct copy of the foregoing document with the Clerk of the Court for the United States District Court of Alaska by using the CM/ECF system. Participants in this Case No. 3:24-cv-00180-SLG who are registered CM/ECF users will be served by the CM/ECF system.

SUMMIT LAW GROUP, PLLC

*s/ Denise Brandenstein*
**Denise Brandenstein,** Legal Assistant
deniseb@summitlaw.com

*Oceana, Inc. v. Nat'l Marine Fisheries Serv.*
Case No. 3:24-cv-000180-SLG

22