**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

AUG 25 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

OCEANA, INC.,

Plaintiff - Appellant,

v.

NATIONAL MARINE FISHERIES SERVICE; UNITED STATES DEPARTMENT OF COMMERCE; HOWARD W. LUTNICK, in his official capacity as the United States Secretary of Commerce, substituted for Gina M. Raimondo; SAMUEL D. RAUCH III, in their official capacity as Deputy Assistant Administrator for Regulatory Programs, National Marine Fisheries Service,

Defendants - Appellees,

AT-SEA PROCESSORS ASSOCIATION; ALASKA GROUNDFISH DATA BANK; GROUNDFISH FORUM, INC.,

Intervenor-Defendants - Appellees.

No. 25-7689

D.C. No.
3:24-cv-00180-SLG

MEMORANDUM*

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, Chief District Judge, Presiding

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted August 10, 2026
Anchorage, Alaska

Before: CALLAHAN, BEA, and BUMATAY, Circuit Judges.

Oceana, Inc., an environmental advocacy group, challenges recent amendments to fishery management plans for the Gulf of Alaska. It claims that the National Marine Fisheries Service ("Fisheries Service") adopted amendments that violated the Magnuson-Stevens Fishery Conservation and Management Act, Pub. L. 94-265, 90 Stat. 331 (1976) (codified at 16 U.S.C. § 1801 *et seq.*). We vacate and remand for lack of Article III jurisdiction.

1. Oceana failed to show that any injury to the organization's members is traceable to the challenged amendments. Oceana must establish that its members' injuries "likely [were] caused or will be caused by the [Fisheries Service]." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024). It cannot rely on a theory of causation that is "too speculative or otherwise too attenuated." *Id.* at 390. And because this appeal comes up from summary judgment, Oceana "must offer evidence and specific facts demonstrating each element [of standing]," including causation. *Ctr. for Biological Diversity v. Exp.-Imp. Bank of the U.S.*, 894 F.3d 1005, 1012 (9th Cir. 2018).

Oceana doesn't argue that the amendments directly cause any environmental harm. In fact, Oceana concedes that "[b]ecause the amendments the Fisheries

Service adopted simply update maps, descriptions, and scientific references to include the most recent information, leaving them in place may have some benefits and is not likely to cause environmental harm that would necessitate vacatur or interfere with a new, lawful analysis by the Fisheries Service." Instead, Oceana relies on a chain of speculative assumptions to argue that the Fisheries Service's amendments—by failing to adopt additional measures to mitigate potential harm to essential fish habitats—likely caused and will continue to cause its members' alleged injuries. To trace Oceana's alleged injuries to the amendments, it is necessary to accept the following chain:

- *First,* if the Fisheries Service had not relied on data about "core" areas of essential fish habitats or minimum stock size thresholds to determine whether fisheries management plans should have been amended, then the Fisheries Service would have developed different criteria to promulgate plan amendments.

- *Second,* the Fisheries Service would then have used those new criteria to identify more essential fish habitats that had been damaged.

- *Third,* the Fisheries Service would then have determined the damage was caused or exacerbated by trawling.

- *Fourth,* the Fisheries Service would then have amended its fisheries management plans to limit trawling.

- *Fifth,* trawling would then have been meaningfully reduced in essential fish habitats.

- *Sixth,* the seafloor of essential fish habitats would then have substantially prospered, i.e. flora and fauna on the seafloor would have increased.

- *Finally,* the greater Alaskan marine and coastal ecosystem would then have become healthier such that Oceana's members could then have more fully enjoyed Gulf wildlife, fishing, boating, and other activities.

Multiple links in Oceana's chain of assumptions are merely "hypothetical or tenuous," and thus cannot support Article III standing. *Nw. Requirements Utils. v. FERC*, 798 F.3d 796, 806 (9th Cir. 2015) (simplified). For one example, Oceana's claim that were the Fisheries Service required to re-do its analyses it would identify more essential fish habitat with "adverse effects . . . caused by fishing," 16 U.S.C. § 1853(a)(7), is pure conjecture. *See Dep't of Educ. v. Brown*, 600 U.S. 551 (2023) (rejecting traceability because it was mere "conjecture" that the existence of one student-loan-forgiveness plan adopted under one statute was related to the failure to provide benefits to the plaintiffs under a hypothetical plan that might have been adopted under another statute). Indeed, Oceana has not pointed to any expert testimony, empirical data, or other admissible evidence showing that it is "predictable" or a "reasonable probability" that trawling would be reduced if the Fisheries Service used different criteria in formulating and amending its fishery management plans. *Ctr. for Biological Diversity v. United States Env't Prot. Agency*, 168 F.4th 1164, 1176, 1178 (9th Cir. 2026) (simplified).

For another example, given the environmental complexity of marine systems like the Gulf of Alaska, Oceana's assertions that its members would personally reap recreational or aesthetic benefits from less trawling are the kind of "vague,

conclusory statements" that cannot support traceability without evidence. *See Washington Env't Council v. Bellon*, 732 F.3d 1131, 1142 (9th Cir. 2013) ("[A]ttempting to establish a causal nexus in this case may be a particularly challenging task . . . because there is a natural disjunction between Plaintiffs' localized injuries and the greenhouse [gas] effect."). And Oceana has also failed to support this claim with competent record evidence (such as expert testimony). Finally, even if we accept some of Oceana's individual steps, "their sum total—and the resulting multi-link 'chain of possibilities'" is unduly speculative. *G.B. by & through G.P. v. United States Env't Prot. Agency*, 172 F.4th 1042, 1061 (9th Cir. 2026) (simplified).

2. For similar reasons, Oceana has failed to demonstrate that its members' alleged injuries are redressable. Redressability requires "a likelihood that [a party's] requested relief will redress the alleged injury." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103 (1998). And Oceana claims that "an analysis [upon remand] consistent with the requirements of the Magnuson Stevens Act could lead the Fisheries Service to conclude that there are adverse effects on essential fish habitat, triggering its obligation to impose practicable mitigation measures [for essential fish habitats.]" *See* 16 U.S.C. § 1853(a)(7) (requiring the Fisheries Service to "minimize to the extent practicable adverse effects [on essential fish habitats] caused by fishing."). But because Oceana's theories for redressability and traceability in this

case are "flip sides of the same coin," *All. for Hippocratic Med*., 602 U.S. at 380, they suffer the same flaws. Like Oceana's theory of traceability, its theory of redressability is too attenuated and contains too many links consisting of unsupported conjecture.

We thus vacate the district court's decision and remand with instructions to dismiss for lack of Article III jurisdiction.

**VACATED and REMANDED.**